**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **DONG KIM,** | \* |
| Plaintiff, | \* |
| v. | \*    Case No.:  PWG-15-410 |
| **CONFIDENTIAL STUDIO, INC.,** *et al.*, | \* |
| Defendants. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Dong Kim worked for Defendant Confidential Studio, Inc. ("Confidential Studio"), a dental business dedicated to the manufacture of false teeth and owned by Defendant Raphael Choi, from August 2011 until January 2015. Compl. ¶ 9, ECF No. 1; Defs.' Mot. 1, 8, ECF No. 30; Pl.'s Opp'n 1–2, ECF No. 31. After working for Defendants for approximately three and a half years, Kim filed suit against his employer, claiming that Confidential Studio violated state and federal law[1] by failing to pay him overtime wages. Compl. ¶ 8. Defendants seek summary judgment, arguing that it is "well settled" that Kim's salary "far exceeded" $455 per week "and his job duties directly related to the management and general business operations of the Practice," such that the administrative exemption applied and he was not entitled to overtime pay. Defs.' Mot. 2, 7. Yet Kim has identified evidence in the record showing that some weeks he received less than $455 and that he was not working in an administrative capacity.

---

[1] Kim claims violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 - 219, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann, Lab. & Empl. §§ 3-501 – 3-509, and the Maryland Wage and Hour Law ("MWHL"), Lab. & Empl. §§ 3-401 – 3-431.

Moreover, he has identified documentary evidence of questionable authority and weight that Confidential Studio relied on to prove its defense that cannot, when challenged, support Confidential Studio's claims that there is no genuine dispute of material fact. Pl.'s Opp'n 31; *see* Jt. Ex., ECF No. 32.[2]  Therefore I will deny Defendants' Motion and schedule a trial in this case.

## Standard of Review

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*.

---

[2] Defendants have not filed a reply and the time for doing so has passed. *See* Loc. R. 105.2(a). A hearing is not necessary. *See* Loc. R. 105.6.

**Discussion**

Pursuant to the FLSA, an employer cannot "employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.  However, the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from overtime pay. 29 U.S.C. § 213(a)(1); *see Lane v. Sys. Application & Techs., Inc.*, No. DKC-13-3566, 2015 WL 1013449, at *6 (D. Md. Mar. 6, 2015).  "'Administrative capacity' has the same meaning under the regulations governing the MWHL as it does under the FLSA regulations. Thus, an employee who qualifies for the administrative exemption under the FLSA also will qualify for that exemption under the MWHL." *Id.* (citing Md. Code Regs. 09.12.41.01).[3]

"[The] employer bears the burden of proving that a particular employee's job falls within such an exemption."  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008).  The employer must establish "by clear and convincing evidence that an employee qualifies for exemption."  *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993).  The Court narrowly construes the exemption against the employer. *See Darveau*, 515 F.3d at 337.

To establish that Kim is an exempt employee under the administrative exemption, Confidential Studio must demonstrate that (1) Kim was "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"; (2) his "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the

---

[3] Defendants note that the administrative exemption applies to the FLSA and MWHL alike, but they do not contend that it also applies to the MWPCL.  *See* Defs.' Mot. 5–6.  Thus, Defendants' argument for summary judgment based on the administrative exemption does not apply to Kim's MWPCL claim.

employer or the employer's customers"; *and* (3) his "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); *see Rossi v. Circle Treatment Ctr., P.C.*, No. 14-3803-GJH, 2015 WL 1815501, at *2 (D. Md. Apr. 17, 2015); *Darveau*, 515 F.3d at 338; *Lane*, 2015 WL 1013449, at *6.

Salary

"An employee [is] considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period . . . a *predetermined amount* constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (emphasis added). Some deductions are permissible, such as for certain absences for at least one full day, as "penalties imposed in good faith for infractions of safety rules of major significance," and "for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules . . . imposed pursuant to a written policy applicable to all employees." *Id.* § 541.602(b). "If employees are actually paid on an hourly rather than a guaranteed salary basis, regardless of the kind of duties performed, they are covered by the wage and hour laws." *Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 484 (D. Md. 1982).

Choi testified that Confidential Studio did "not keep track of any employee hours." Choi Dep. 68:6–12, Jt. Ex. 23. Yet, Kim's biweekly paychecks from January 1, 2013 through June 16, 2014 show that he did not receive a consistent salary, which calls into question whether he was receiving a predetermined amount. *See* Pl.'s Paychecks, Jt. Ex. 129–291. Without addressing whether Kim was paid on a "salary basis," Confidential Studio asserts that Kim earned in excess of the statutory amount, *see* Defs.' Mot. 7, and it is undisputed that this is true of many of the weeks Kim worked for Defendants, *see* Pl.'s Opp'n 5. But, significantly, he received less than

$910 (the equivalent of $455 per week for two weeks) for seven paychecks during that period. Pl.'s Paychecks, Jt. Ex. 129-291 (Feb. 16, 2013 paycheck for $200.00, Jt. Ex. 137; Nov. 1, 2013 paycheck for $457.00, Jt. Ex. 170; Nov. 16, 2013 paycheck for $700.00, Jt. Ex. 172; Dec. 24, 2013 paycheck for $100.00, Jt. Ex. 178; Jan. 7, 2014 paycheck for $150.00, Jt. Ex. 181; Apr. 16, 2014 paycheck for $100.00, Jt. Ex. 196; July 16, 2014 paycheck for $300.00, Jt. Ex. 212). He testified that he "received 1400 something" every two weeks "after July of 2014, after tax, but before then [he did] not know well" how much he received. Kim Dep. 44:18 – 50:6, Jt. Ex. 63–64.

Thus, it is far from clear (and much less than "clear and convincing") that Kim received "a predetermined amount." *See* 29 C.F.R. § 541.602(a). Moreover, Kim has shown that a genuine dispute exists regarding whether he received a salary "of not less than $455 per week" while working for Defendants. Because this fact is material to whether Kim was an exempt employee and therefore not entitled to overtime pay, *see* 29 C.F.R. § 541.200(a), it alone is sufficient to defeat Defendants' summary judgment motion. *See Celotex v. Catrett*, 477 U.S. 317 (1986). But, genuine disputes exist as to the other elements of the exemption as well.

### Primary Duty

An employee's "'primary duty'" is "'the principal, main, major or most important duty that the employee performs,'" which the Court determines "'based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.'" *Lane*, 2015 WL 1013449, at *7 (quoting 29 C.F.R. § 541.700(a)). The Court considers how much time the employee "'spent performing exempt work'" and how important his exempt duties were in comparison to his other duties, as well as how much "direct supervision" he received and how

5

his salary compared to the wages other employees received for the nonexempt work he performed. *Id.* (quoting 29 C.F.R. § 541.700(a)).

    *1. Non-Manual Work Directly Related to Business Management*

An employee performs work "directly related to the management or general business operations" if he or she "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line . . . ." 29 C.F.R. § 541.201(a). An employee may perform work related to management or business operations without having "direct supervisory responsibility over the other employees on the team," such as if "[a]n employee . . . leads a team of other employees assigned to complete major projects for the employer (such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements)." 29 C.F.R. § 541.203(c).

In this Court, the employee's "actual duties" are "the most important consideration." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 520 n.1 (D. Md. 2007); *see also Whittington v. Wash. Suburban Sanitary*, No. AW-10-425, 2011 WL 1231168, at *4 (D. Md. Mar. 28, 2011) ("[P]osition titles are not dispositive for the determination of whether an employee is exempt from the FLSA requirements."). "Whether an employee's 'particular activities excluded [him] from the overtime benefits of the FLSA is a question of law,'" such that "'[t]he determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question.'" *Lane*, 2015 WL 1013449, at *6 (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004)). Nonetheless, "[h]ow an employee spends h[is] time working—i.e., what []he does while at work—'is a question of fact.'" *Id.* (quoting *Icicle Seafoods, Inc.*, 475 U.S. at 714).

Choi testified that Kim was an "assistant manager" who "was in charge of [the] [w]ax and metal" department, where he "supervise[d] two people." Choi Dep. 82:18 – 83:20, 99:19–22, Jt. Ex. 26, 28.  According to Choi, Kim participated in the decision to hire one of the employees he supervised. *Id.* at 83:15 – 84:21, Jt. Ex. 26. Choi said that Kim spent "between thirty and forty percent" of his time "managing people[]." *Id.* at 91, Jt. Ex. 27.  Additionally, "as a manager," Kim did not have set hours but rather could "look[] at the day's work" and "sometimes the work finishes earlier" and "sometimes it is delayed." *See id.* at 68:18 – 69:13, Jt. Ex. 23–24. Kim had "keys to open and close the business," which "each department's manager" received but not "ordinary employees." *Id.* at 103:21 – 104:13, Jt. Ex. 29.

Kim testified to the contrary that he was not an "assistant manager" and his "job [was] not about hiring or firing a person"; he "only worked as a technician" in "the wax and metal department."  Kim Dep. 25:20–22, 53:9–10, 57:21–58:1, Jt. Ex. 58, 65–66. According to Kim, it was not he but rather another employee named Sol Han who managed the wax and metal department.  *Id.* at 27:10-20, Jt. Ex. 58.  He stated that he "was not involved" in creating the schedule for the work to be done in this department. *Id.* at 30:2–31:9, Jt. Ex. 59.

As for what exactly he did, his testimony described the process through which he "received work from [the] model department" and added wax and metal to create false teeth; generally, it was "the same pattern every day." *Id.* at 60:12–61:3, Jt. Ex. 67.  And, Kim "spent nearly 100% of [his] time working at Confidential building using [his] hands to manipulate tools and machines" to perform his "primary and most important duty," which "was to make teeth in the laboratory."  Kim Decl. ¶¶ 6–7, Jt. Ex. 296; *see* Choi Dep. 89:1–90:14, Jt. Ex. 27 (acknowledging an earlier declaration that Kim provided, not a part of the record, to the same

7

effect). Thus, a genuine dispute exists regarding Kim's position and his primary duty, specifically whether he worked in a managerial capacity.

   2. *Exercise of Discretion and Independent Judgment*

"[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). The Court considers "all the facts involved," including the employee's autonomy; the effects that the employee's authority has on "management policies or operating practices"; and "whether the employee performs work that affects business operations to a substantial degree." 29 C.F.R. § 541.202(b). The employee must do "more than . . . use . . . skill in applying well-established techniques, procedures or specific standards" or perform "mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e).

Kim testified that he worked "according to the directions, . . . step by step" and did not "proceed[] with [his] work under [his] own judgment." Kim Dep. 74:9–14, Jt. Ex. 70. He "asked . . . questions" about "things outside of the directions." *Id.* at 75:7–12, Jt. Ex. 70. This testimony creates a genuine dispute about the discretion and independent judgment Defendants insist Kim had.

Thus, a genuine dispute exists regarding how much Defendants paid Kim on a weekly basis. Additionally, a genuine dispute exists as to what Kim's primary job duty was, and that must be resolved before I can determine whether it was manual or managerial. A genuine dispute also exists regarding whether Kim exercised discretion or independent judgment. Because these questions of fact are material to the issue of whether Kim was an exempt

employee under the FLSA, I cannot resolve the issue by summary judgment. *See* 29 U.S.C. §§ 207, 213(a)(1); *Icicle Seafoods, Inc.*, 475 U.S. at 714; *Lane*, 2015 WL 1013449, at *6. Confidential Studio's motion for summary judgment is denied. *See* Fed. R. Civ. P. 56(a).

## **ORDER**

Accordingly, it is, this 12th day of September, 2016, hereby ORDERED that Defendant's Motion for Summary Judgment, ECF No. 30, IS DENIED; and I will schedule a call to set the trial date.

        /S/
Paul W. Grimm
United States District Judge

lyb